IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A.M., a minor, by and through JAMIE and RON McKALIP, his parents and natural guardians, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:20-cv-290-SPB |
| v. | ) ) | |
| PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, INC., *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION</u>**

This matter is before the undersigned on an emergency motion for injunctive relief. For the reasons that follow, the Plaintiffs' motion will be denied.

**I.    Background**

At the center of this litigation is a rule, recently enacted by the PIAA District 10 Committee, which reduces the number of high school golfers who can compete in the District 10 (hereafter, "D-10") boys individual golf tournament. The D-10 tournament, which commences on October 2, 2020, is the competitive forum through which high school golfers attending D-10 schools attempt to earn a berth in the PIAA state golf tournament.

The Plaintiffs in this case are four student athletes who seek admission to the D-10 golf tournament, their parents, and their respective school districts. A.M. and J.V. are high school seniors at Conneaut Area Senior High School. The Conneaut School District competes in Region 3 of the D-10 golf program.  L.W. and J.H. are a senior and junior in high school,

1

respectively, at Slippery Rock Area High School. The Slippery Rock Area School District competes in Region 2 of the D-10 golf program.

In recent years, D-10 allowed 8 players from Region 3 and 9 players from Region 2 to compete in the boys D-10 championship golf tournament. That was the case until September 24, 2020, when the PIAA District-10 Committee enacted a rule reducing the number of eligible golfers, so that now only four (4) golfers from Region 3 and five (5) golfers from Region 2 can compete in the D-10 tournament on October 2, 2020.

Each of the Plaintiff student-golfers would like to participate in the D-10 championship tournament and would have been eligible to do so under the prior eligibility rules. Moreover, as they began their regular season, and even as they completed that season, they believed, based on then-applicable rules, that they were eligible to participate. On September 23, 2020, however, the PIAA changed its rules to reduce the number of male golfers who would be eligible to compete in the state championship tournament. The D-10 Committee followed suit the following day and reduced the number of male golfers who would be eligible to participate in the D-10 championship tournament and thereby compete for a berth in the state playoffs. Thus, Plaintiffs only learned in the past week that the eligibility standards had changed.

This litigation ensued, with the Plaintiffs' filing, on September 30, 2020, of a petition for injunctive relief in the Crawford County Court of Common Pleas. Defendants removed the matter to this Court on October 1, 2020. Plaintiffs' petition names as Defendants the PIAA, the PIAA District 10 Committee, and Michael Ferry, the PIAA District 10 Golf Tournament Director. Although no actual "complaint" has yet been filed, upon agreement of all parties, the Plaintiffs' verified motion serves for present purposes both as a motion for injunctive relief under Federal Rule of Civil Procedure 65 and as the operative pleading. Construing the petition in that

fashion, the Court perceives that Plaintiffs are alleging the violation of their Fourteenth Amendment right to equal protection under the law, as well as a claim that the Defendants' actions violated District 10's "guiding philosophy." *See* ECF No. 1-3, ¶¶24, 29.

The Court held a hearing on the same date as the matter was removed. During the hearing, the Court accepted testimony from Jamie McKalip, Barbra Vaughn, Diana Wolak, and Kevin Hadley – all of whom are parents to the four student athletes named as Plaintiffs herein. Plaintiffs also offered testimony from Jarrin Sperry, the Superintendent of the Conneaut Area School District. From the defense, the Court heard testimony from Robert Lombardini, the PIAA's Executive Director, and Peter Iacino, Chair of the PIAA District 10 Committee. Mr. Lombardini and Mr. Iacino also submitted affidavits for the Court's consideration. ECF Nos. 4 and 5.

Upon consideration of the testimony and evidence in the case, the Court renders the following ruling, which constitutes its findings of fact and conclusions of law.

**II.     Standard of Review**

"[T]he grant of injunctive relief is an 'extraordinary remedy which should be granted only in limited circumstances.'" *Instant Air Freight Co. v. C.F. Air Freight, Inc*., 882 F.2d 797, 800 (3d Cir.1989) (quoting Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir.1988). To prevail, the Plaintiffs must demonstrate that: (1) they are likely to succeed on the merits of their claims, (2) they are likely to suffer irreparable harm without relief, (3) the balance of harms favors them, and (4) relief is in the public interest. *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017). "All four factors should favor relief before an injunction will issue." *S & R Corp. v. Jiffy Lube Int'l, Inc*., 968 F.2d 371, 374 (3d Cir. 1992)

3

(citation omitted).  However, before reaching factors three (3) and four (4), the moving party must first satisfy its burden with respect to factors one (1) and two (2).  If a plaintiff fails to satisfy this burden, this is the end of the inquiry, and a preliminary injunction will not issue.  *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017).

### III.   Analysis

#### A.  Likelihood of Success on the Merits

The first factor to consider is whether the movant can demonstrate that their claims have a likelihood of success on the merits.  *See, e.g.*, *T.W., v. Southern Columbia Area Sch. District*, 2020 WL 5751219, at *3 (M.D. Pa. Sept. 25, 2020).  To satisfy this showing, the Plaintiffs need only establish a prima facie case demonstrating a "reasonable probability" of success.  *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) (internal quotations omitted).  They are not required to prove that success is "more likely than not."  *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 n. 3 (3d Cir. 2017) (internal quotations omitted).  Nevertheless, the Plaintiffs bear the burden of making this showing and here, they have come up short.  It is unlikely that the Plaintiffs can succeed on the merits of their Equal Protection claim.

Equal protection claims, when they do not involve a suspect class or fundamental right, will be governed by the "rational basis test."  *Moreland v. Western Pennsylvania Interscholastic Athletic League*, 572 F.2d 121, 124 (3d Cir. 1978).  Both Parties agree that this test applies to the Plaintiffs' claim.  Under this test, government action will be upheld so long as it "rationally furthers some legitimate, articulated state purpose.  *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973).  The rational basis test is difficult to overcome, as "it has long been settled that the Equal Protection Clause is offended only by laws that are invidiously

discriminatory—only by classifications that are wholly arbitrary or capricious." *Id*. (Stewart, J., concurring).  That is, under the rational basis test, "if the justification for the disparate treatment is neither arbitrary nor capricious, but grounded on some reasonable policy, there is no denial of equal protection of the laws." *Pfender v. Beard*, 2011 WL 680203, at *3 (M.D. Pa. Feb. 16, 2011), *aff'd sub nom. Pfender v. Sec'y Pennsylvania Dep't of Corr.*, 443 Fed. Appx. 749 (3d Cir. 2011) (citing *Jamieson v. Robinson*, 641 F.2d 138, 142 (3d Cir.1981)).  Here, the Defendants' actions were not arbitrary or capricious.

Courts typically resist interfering or second-guessing the decisions of high school athletic associations, except where the action complained of is one of fraud, or an invasion of some property or pecuniary right.  *See, e.g.*, *Dziewa v. Pennsylvania Interscholastic Athletic Ass'n.*, 2009 WL 113419, *6 (E.D. Pa. Jan. 16, 2009) (citation omitted).  The Plaintiffs acknowledged that they do not advance any allegations of fraud or assert claims relating to an invasion of a property or pecuniary interest.  Thus, whether or not the PIAA acted arbitrarily or capriciously is determined by the reasonableness of its actions in reducing the number of student golfers eligible to participate in the District 10 tournament.  Here, the PIAA's actions were reasonable.

No evidence has been presented that the PIAA's decision to reduce the number of golfers eligible for the District 10 tournament was ill conceived, random, haphazard or otherwise rushed. It was not based on whim or conjecture.  Testimony provided by PIAA officials indicated a methodical and careful chronology of their decision making.  The PIAA acknowledged first that it operated within the guidelines for dealing with the Covid-19 pandemic handed down by the Governor of Pennsylvania.  The PIAA applied these general guidelines—which included social distancing, masks, and handwashing—to all sports.  Then, recognizing the dangers attenuated by the virus, the PIAA cancelled all spring 2020 interscholastic athletics.  Dr. Robert A. Lombardi,

the Executive Director of the PIAA, testified at the hearing and by affidavit that significant changes have been made to championship tournaments in many sports, including the elimination of some altogether.  *See* ECF No. 4, ¶ 22.  The PIAA's medical committee (PIAA Sports Medicine Advisory Committee) has continued to meet throughout this crisis, most recently on September 20, 2020.  On September 23, 2020, the full Board of Directors of the PIAA met and decided, based on the medical committee's recommendation, to curtail certain athletic competitions throughout the Commonwealth.  The decision to reduce the number of eligible qualifiers was communicated to players and coaches in District 10 the next day.

      Mr. Peter P. Iacino, Chair of the PIAA District 10 Committee, testified that the number of eligible golfers was reduced to satisfy safety protocols the PIAA put in place to minimize the risk of exposure and spread of the Covid-19 virus.  For example, Iacino stated that in order to minimize congestion of golfers on the course, the "field size" was limited, the traditional "shot gun start" was jettisoned, and the times between tee-offs were increased.  *See* ECF No. 5, ¶ 17(A)(2).  The changes brought on by the PIAA's response to the pandemic meant that the time to complete the championship rounds was increased to sometime between and 6.5 and 7.5 hours.  Thus, it would have been difficult, if not impossible, to complete the championship with the original number of eligible golfers within normal time parameters.  See *id.*, ¶ 17(B).  The Plaintiffs do not dispute any of this.  Thus, the Court can only conclude that the PIAA's actions, while no doubt disappointing and disheartening to the promising young linksmen of District 10, were deliberate, careful, and considered.  Thus, the PIAA's decision to curtail the number of tournament invitations was not arbitrary or capricious.

      A decision is arbitrary and capricious when the decision-makers willfully disregard evidence or testimony which someone of reasonable intelligence "could not possibly have

avoided in reaching" their decision. *Id*. (citation omitted). The PIAA has a reasonable justification for its decision, to avoid the spread of Covid. And its actions in curtailing the number of students invited to the championship tournament is reasonably related to that goal.[1] Thus, the Plaintiffs are unlikely to succeed on the merits of their claim.

### B. Irreparable Harm

Defendants also argue that the Plaintiffs have not demonstrated "irreparable harm" as a result of the recent rule change. The Court agrees.

In order to prove irreparable harm, the moving party "must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994) (internal quotation marks and citation omitted). Critically, numerous courts in this Commonwealth – both federal and state -- have concluded

---

[1] The Plaintiffs' focus on decisions from the PIAA relating to this season's high school football competitions is misplaced. The issue before this Court is the propriety of the actions concerning District 10's golf tournament. Other decisions made in other sports are not before the Court, but were made following recommendations by the medical committee, as here.

that a student is not "irreparably harmed," for purposes of injunctive relief, by his or her inability to compete in interscholastic high school sports, even when the student is barred from competition for an entire season.  *See, e.g., Dziewa v. Pennsylvania Interscholastic Athletic Ass'n, Inc*., No. CIV.A. 08-5792, 2009 WL 113419, at *7 (E.D. Pa. Jan. 16, 2009) ("This Court, as well as all other federal courts, have previously and consistently held that ineligibility for participation in interscholastic athletic competitions alone does not constitute irreparable harm."); *Cruz v. Pennsylvania Interscholastic Athletic Ass'n, Inc*., 2000 WL 1781933, *1 (E.D. Pa. Nov. 20, 2000) (no irreparable harm where student was "limited in his participation in high school athletics rather than barred from it entirely" and could still practice with his team, dress in uniform and attend competitions); *Sahene v. Pennsylvania Interscholastic Athletic Ass'n*, No. 99-902, at 5-6 (W.D. Pa. July 19, 1999) (plaintiff would not suffer irreparable harm if precluded from competing in interscholastic football for an entire season where he could practice with his team, coach others, or participate in intermural sports and non-school related athletic events); *Revesz ex rel. Revesz v. Pennsylvania Interscholastic Athletic Ass'n, Inc*., 798 A.2d 830, 836 (Pa. Commw. Ct. 2002) ("The fact that a student is determined ineligible to play interscholastic sports for one year does not necessarily translate into a loss of opportunity to attain college scholarships.") (citing *Adamek v. Pennsylvania Interscholastic Athletic Association*, 57 Pa. Cmwlth. Ct. 261, 426 A.2d 1206 (1981)).

Although Plaintiffs acknowledge this authority, they seek to distinguish it on the basis that the eligibility issues in the foregoing decisions were premised on different criteria than the D-10 rule change at issue here.  In this Court's view, however, the rulings in *Dziewa*, *et al.* did not depend upon the type of distinctions that Plaintiffs seek to draw; therefore any differences in the reasons underlying the students' ineligibility in prior cases is immaterial for present purposes.

Here, the undisputed evidence shows that each of the Plaintiff athletes was able to compete in PIAA sanctioned golf matches throughout the regular fall 2020 season. The harm they are now suffering is their inability to compete in the post-season D-10 championship tournament, and – depending on their performance – possibly the PIAA state championship tournament. The loss of these opportunities, while no doubt immensely disappointing to the Plaintiffs, does not constitute the type of harm that is deemed "irreparable" for purposes of obtaining the extraordinary remedy of injunctive relief. For this reason as well, Plaintiff's request for injunctive relief cannot be granted

### IV. Conclusion

The changes in the D-10 tournament rules that are at issue in this case have no doubt wrought genuine disappointment for the student athletes who were adversely affected by the change, as well as for their families. COVID-19 has affected all of our lives and normal dealings, and none more than students who have had their world turned upside down. Although the Court is grieved for the students and all they have lost this year, especially the four fine golfers who were dealt this blow just a week ago, we all have to deal with the reality that nothing is the same as it was prior to this pandemic. The Court will and should always err on the side of safety, which was the basis for the ruling by the PIAA to lower the numbers of golfers in the tournament. It is not the Court's job to decide the better course, but to ensure the one taken was not arbitrary and capricious, or for a wrongful purpose. Although the decision was a painful one for the Plaintiffs, it was done with a rational basis and passes muster under the law.

_Susan Paradise Baxter_
Susan Paradise Baxter
United States District Judge